The next case on our calendar this morning is number 193861, Peerless Insurance Company v. Technology Insurance Company. Good morning, Your Honors. Max Gershwire for the Appellant Technology Insurance Company. The primary question in this case is a very simple one. Did the subject accident occur on a portion of the shopping mall leased to Technologies Insured, Vintage Steakhouse? That's the only proper question to ask because Technologies Policy states explicitly that the mall owner's coverage does not apply to injury that is not sustained within that part of the premises leased to Vintage. Since there's no dispute that the accident occurred on a sidewalk curb cut abutting the parking lot in front of the New York law about where there is no other access to that, that is what might be covered by the policy. Haven't two lower courts done that? And isn't that enough to make the question at least sufficiently in doubt so that under our Hugo Boss decision a duty to defend is there? Your Honor, that's correct that two lower courts in New York state have so found. They are lower courts, unpublished decisions. They are not in any way binding on this court. Of course they're not, we're talking about New York law. This is a case of New York law. Right, but if you look at those cases, those cases relied exclusively on a New York Court of Appeals case that addressed the additional insured endorsement that only includes the insuring agreement, not the exclusion at issue. So we submit. There is no doubt that the only decision of a New York Court of Appeals had the first clause and not the second clause. So the question here is, does the fact that this has a second clause which can be read in one way or another, is that sufficiently doubtful, uncertain, so that under our decisions and New York's decisions too about duty to defend, there is a duty to defend? I understand your question, Your Honor. What? I said I understand your question, Your Honor. The case law is very clear, both in this circuit and the state courts, that the interpretation of an insurance policy, insurance provision, is a question of law for the court. The question is, I believe that the controlling question is, is this exclusion that has been added to this endorsement ambiguous or not? We submit that it is unambiguous. It states that it does not apply, that the coverage does not apply to injury that is not how that provision could be drafted any more clearly. It clearly states that the dispositive question on coverage with regard to the exclusion is whether the accident occurred or did not occur within the premises that were leased to the name insured. Yes, there are two lower court decisions that say otherwise, but that does not preclude this court from exercising its own judgment in terms of the question of law as to whether that provision is ambiguous or not. But when it's a question of New York law, our judgment has to be based on New York law. And if a couple of New York courts read this, it can be read as being ambiguous. And if it is ambiguous, by the way, if we apply contra pro parentum, that applies to you. Now, we could say that it's sufficiently uncertain that we should certify, but I'm not at all sure that given contra parentum, if it is uncertain, we need to certify. Yes, Judge, I don't believe that there's any case law stating and certainly wasn't an issue raised in the in peerless brief, that the mere fact that there are low that there's a lower court decision that says that states one thing that that necessarily requires this court to determine that the issue is in any way uncertain. I've certainly seen cases, I think the brief case from the Court of Appeals of New York, that says just because courts may differ as to a question on the interpretation of insurance policy does not render the provision ambiguous. It's still up to the reviewing court to determine that question. So I would submit that given the there's certainly plenty of case law in New York, which we cited in our brief, that says that unambiguous provisions must be read the way that they're written. And I simply, you know, there has been neither the district court nor peerless has explained how this exclusion can be read in any way other than that it states. Well, it can be read to say that there is only liability, that there is liability where there is no other entrance. And if there is another entrance, another way of getting within it, then that there would be no coverage. It can be read that way. I'm not saying that that's the best reading by any means, or that that's the reading that I would give it, but there is another possible reading, isn't it? Respectfully, Your Honor, I... Judge Calabrese, please answer Judge Calabrese's question, but I just want to let you know you have just a minute left. Thank you, Judge. Yes, again, all I can do is continue to read the provision. It says that it doesn't apply to injuries that to name in short. So that raised the question, what is the boundary of the lease premises? And to answer that question, the only proper document to look at is the lease. And here, the lease could not be clearer that the sidewalk and the parking lot at issue are part of the common area. Section 802 of the lease explicitly states that the diagram exhibit A to the lease shows graphically that the only portion of the premises that is leased... What we are interpreting is the insurance policy. If the insurance policy made a direct reference to the lease, then we'd look to the lease. But it is the insurance policy that determines whether there is coverage or not, isn't it? Absolutely, Your Honor. But that provision does refer to the premises leased as the boundary for coverage. So it necessarily requires the reader of the policy to go to the lease to see what is the boundary of the premises that are leased to the named insured. Okay, Mr. Gershwar. You've reserved several minutes for rebuttal. We'll hear from Mr. Potashner now. Thank you. Thank you, Your Honor. This is Marshall Potashner for the Appellee Peerless Insurance Company. I'm actually going to first address the medical expense issue just in short to get that out of the way and then move over to the main issue. With respect to the medical insurance issue, I'd like to point out I probably should have been clearer in my brief. In the record, there's an endorsement to the technology policy that starts at page A400. It's called the New York Changes Commercial General Liability Coverage Form. And on page three of that endorsement, which is page A402 in the record, the technology policy says, there to give notice to us as required under this coverage part, shall not invalidate any claim by the insured person or any other claimant. Counsel, Judge Calabresi, there is no law interpreting in New York, interpreting whether this medical is covered by the no prejudice rule or not. There's just nothing there. The only problem is that the only thing that is at stake is $5,000. And I don't believe that you or opposing counsel would want us to certify to the New York Court of Appeals where the only thing in issue is $5,000. Am I correct? Yes, I understand that, Your Honor. But the finishing quote, it specifically says, in their policy, the matter of contract, they won't take this claim unless such timely notice has prejudice us. I should have pointed that out. That provision pertains to the Commercial General Liability Coverage Part, and the medical expense coverage is part of that coverage part. So by contract, they specifically said they won't disclaim unless there's prejudice. And I should have pointed that out more clearly in my brief, and I did not. And that's on page A402 of the record. But could you just clarify for me, could you just clarify for me, the district court found, I think, that notice had been given, or that technology received notice on or about February 24, 2015, when it received in a court notice form. So it was notice of the incident. But you're saying that they needed to receive, that they needed to provide notice of a medical expense claim, and that is distinct from the underlying incident. Is that right? I think that's what the appellate is arguing. I'm not arguing that. I'm just pointing out that regardless, they would have to show prejudice, and they did try to show prejudice. And it's been their own contract. Okay. Thank you. Moving over to the main argument, it's undisputed that the sidewalk where the accident occurred was between a series of parking spaces allowed for a vintage's sole use and the front door of the both Vintage and Amelia. Both agree that the sidewalk where the accident occurred was part of the lease premises. Mr. Noto, Amelia's principal, submitted a declaration. Mr. Cacciaro, Vintage's principal, testified as such at his deposition. Now, they could have, this is technology's own, named it short. They could have put a contrary affidavit in, in response to the motion. They could have asked questions at his deposition. They didn't either. So the only evidence in the record is that the accident actually occurred on the lease premises. In addition, looking to the lease itself, under section 1102 of the lease, which discusses the tenant's obligations, it defines the sidewalk as within the lease premises. Section 1409 of the lease, which addresses indemnification, it says the premises shall include the loading platform area allowed to tenant's use and any adjacent sidewalks. In fact, Mr. Cacciaro, the restaurant's principal, testified that Vintage paid for the cost of keeping the sidewalk free of snow and ice and for sweeping the sidewalk. Vintage would have had no such responsibilities for the common area. So the evidence, as a matter of law, shows that the sidewalk was part of the demise premises. However, even if not, the district court decision was still correct. Technology limits its arguments to the exclusion. The exclusion applies to, quote, injury that is not sustained within the part of the premises leased to you. It does not define what it means, premises leased to you. It does not say that the premises must be set forth as the demise premises specifically stated as such in the underlying lease. And it does not preclude the concept that a sidewalk area for a tenant's exclusive use, which the insured had to respond, which the tenant had the responsibility to maintain and to indemnify the landlord for, is not part of the premises leased to, quote, you, which is Vintage. And in fact, I believe that's how the two lower court courts that address this issue looked at it. And under this circumstance, given that the evidence that it was on the lease premises, and even if you take the argument that it was not technically within the demise premises, that the evidence establishes enough that they're not able to show that exclusion unambiguously excludes this claim. And that's what they have to show, since they're relying on exclusion, that the court below was right for granting not both only the duty to defend, but the duty to indemnify. And so, can you hear me? This is Judge Newman. Yes, Your Honor. Can I still participate by phone in a conference with our mediation people? Yes, I believe so. And at mediation, it was not possible to resolve a $5,000 case in our court? Is that the situation? No, the $5,000 issue is only the medical aspect portion. There's the whole other portion, which is the real, what's tearing the ball here. And how much is involved in that? Well, it's a declaratory judgment for the most part, which means that you're talking about, we don't know what the value of the underlying claim is, but my understanding is it's a rather substantial claim. Ultimately, this court will decide who's responsible for that claim. Sure. I see. Okay, thank you. So, just the final, just to sum up a little bit in the final, I would say that as previously noted, the duty to defend is even stronger here. It's an allegation of complaint that it occurred on the tenant's property. The tenant was sued as being responsible for where the accident occurred. That's enough to trigger the duty to defend, and you cannot rely on extrinsic evidence like technology is trying to do, particularly where the issue of who's responsible for that sidewalk may be determinative in the underlying action. So, unless the court has any further questions, I would rely on my brief for the remainder of my arguments. Thank you very much, Mr. Kutashner. We'll hear the rebuttal, please. Thanks, Judge. I just note that in the argument and in the brief, in terms of the issue of the exclusion, Payless relies only on deposition testimony, which is obviously extrinsic evidence to the controlling lease, and to provisions in the lease that do not discuss the boundaries of the provisions that do. They avoid any discussion of the fact of the diagram, which clearly shows that the shaded area, which describes the lease premises, is only the building, and Section 802 of the lease, which defines common area to include, quote, parking areas, pedestrian walks, and curb cuts. So, the lease could not be any clearer that the lease premises does not include the parking areas or the sidewalk. The fact that there might be an obligation to maintain those areas, that that was done in practice, does not resolve the coverage issue, which is dictated by the terms of the exclusion. So, the lease is unambiguous in that respect. I also want to point out that the district court found not only a duty to defend, but a duty to indemnify. So, even if there were a question as to the scope of the exclusion, which we submit there isn't, but even if that was enough for the court to decide there was a duty to defend, they would still have to reverse the district court to the extent that it found that there was a duty to indemnify. With regard to the medical expense issue... You have a minute left. Yes, you're right. Payless does not contest that to qualify for medical expense coverage, the injured party must notify the insurer of the expense within a year of the accident. It does not contest that any such notice was given to technology. In fact, it was not. Instead, it argues for the first time on appeal and without citing any supporting case law that insurance law 3420 requires technology to demonstrate it was prejudiced by the breach. But as explained in detail in our reply brief, Payless is wrong because 3420's prejudice requirement, which by the way is what is incorporated into the policy, which is what counsel was just referring to, it's nothing more than that, that applies only to late notice of third-party liability claims. And since medical expense coverage is a first-party coverage... You agree that there is no law about whether it applies only to third... that whether this claim was a medical insurance or a non-fault liability claim of the other sort, whether this coverage is in one or the other, there is no law in New York at the moment. You agree with that? I agree with that 100% and I think it's because no one's made that argument. This is a novel argument that Payless did not even make in the lower court. So yes, I agree, your honor, there is no case law on this particular point. You say that this is medical insurance, they say that it's no fault liability. And the question is what it is. I don't know if that's what their argument is. All I can say is, and we cited a case, I think a California case that cited a treatise on the issue, that medical expense coverage is a first-party coverage. It's not a liability coverage. So it is not covered by 3420's prejudice requirement, which clearly applies only to third-party liability claims. All right, I think we have the arguments. Thank you very much. We will reserve decision. Thank you, Judge. Thank you, your honor. Thank you both.